# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 08-CV-2799 (JFB) (WDW)

---

Constance Myers and Mark Myers,

Plaintiffs,

versus

Lennar Corporation,

Defendant.

---

**MEMORANDUM AND ORDER**
December 30, 2010

---

Joseph F. Bianco, District Judge:

Plaintiffs Constance and Mark Myers ("plaintiffs") bring this negligence action against defendant Lennar Corporation ("Lennar" or "defendant"), seeking to recover damages for injuries allegedly arising from Constance Myers' fall on property owned by defendant. Her husband, plaintiff Mark Myers, brings claims for loss of society and consortium. Lennar now moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. As set forth in more detail below, the motion is denied.

I. Background

A. The Facts

The facts described below are taken from the parties' deposition transcripts and from defendant's Rule 56.1 statement of undisputed facts.[1] Upon consideration of a motion for

---

[1] As an initial matter, defendant argues that plaintiffs failed to properly respond to defendant's Rule 56.1 statement, and that defendant's facts should be deemed admitted. The Court notes that plaintiffs have failed to comply with Local Civil Rule 56.1. Local Civil Rule 56.1(a) provides that, "[u]pon any motion for summary judgment . . ., there shall be annexed to the notice of motion a separate, short and concise statement, . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Similarly, Local Civil Rule 56.1(b) provides that

"papers opposing a motion for summary judgment shall include a . . . numbered paragraph responding to each numbered paragraph in the statement of the moving party." Here, although defendant submitted a statement of undisputed facts, plaintiffs have not; instead, plaintiffs included a "Supplemental Statement of Facts" in their brief opposing defendant's motion for summary judgment. Where the opposing party fails to provide a separate statement containing factual assertions, the Court is free to disregard any assertions made by the opposing party. *See Watt v. New York Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 U.S. Dist. LEXIS 1611, at *1 & n.1 (S.D.N.Y. Feb. 16, 2000). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935(ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiffs did not specifically contest defendant's 56.1 statement, plaintiffs' submission, including the Supplemental Statement of Facts, provides the factual basis for plaintiffs' position. Thus, both the Court and the defendant are able to discern the factual evidence upon which plaintiffs are relying to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Fed. Trade Comm'n v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) (overlooking party's failure to comply with Local Rule 56.1 and considering "'the totality of the parties' submissions in identifying disputed material facts'" (quoting *Hamilton v. Bally of Switz.*, No. 03 Civ. 5685, 2005 WL 1162450, at *9 (S.D.N.Y. May 12, 2005))). Thus, where defendant's Rule 56.1

summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

Defendant owns a model home located at 1122 Virginia Water Drive, Rolesville, North Carolina ("the model home"). (Def.'s 56.1 ¶ 3.) The model home contained a sales office for the Cedar Lakes community of homes. (*Id.*) On September 3, 2006, plaintiffs arrived at the premises of the model home and proceeded to view it and other model homes in the Cedar Lakes community. (*Id.* ¶¶ 7, 9.)

On her way back to her car from the model home, having finished viewing homes in the Cedar Lakes community, Constance Myers "cut" across the grassy area on the lawn between the curb and the sidewalk. (Decl. of Allison A. Snyder ("Snyder Decl.") Ex. C at 20-21, 33 (deposition testimony of Constance Myers).) While walking there, she stepped into a "dip" in the grass with her right foot, causing her to fall and injure herself. (*Id.*) This "dip" was located near the rear passenger side of her car and was estimated to be about "12 inches all the way around" and "approximately four inches" deep. (*Id.* at 33-36.) According to Mark Myers, "it was basically camouflaged by the grass . . . . [It] was covered by the grass. You would never know it was there." (Snyder Decl. Ex. D at 19, 21 (deposition testimony of Mark Myers); *see also* Snyder Decl. Ex. F at 11-12 (deposition testimony of Thomas Vincent

---

statement is cited, the statement is supported by the record, and there is no evidence in the record to contradict that fact.

2

Spicci ("Spicci"), Lennar sales counselor, that the grass had "grown up evenly" so that you "wouldn't be able to tell that [there] was a hole").) Neither plaintiff noticed the dip prior to the fall. (Snyder Decl. Ex. C at 29-30, 36; Ex. D. at 21.) Plaintiffs do not know what caused the dip in the grass, how long it had been there prior to the incident, or whether anyone had informed defendant that the dip was there. (Snyder Decl. Ex. C at 37-38; Ex. D. at 22.)

When Constance Myers exited her vehicle upon initially arriving at the model home, the grass on the front lawn was not wet or damp. (Snyder Decl. Ex. C at 29:20-24.) The grass in the area of her vehicle was "not high." (*Id.* at 30:6-9; *see also* Snyder Decl. Ex. F. at 15:1-3 (Spicci testified that the grass was "[m]aybe an inch high").) There is testimony that the grass was "probably" cut weekly, (*id.* at 15:4-6), but there is no evidence when it was cut last before Constance Myers fell. There is no evidence on record that the lawn in front of the model home was inspected for safety concerns.

Several days after Constance Myers' fall, Geoffrey Bickel ("Bickel"), then construction manager at Lennar, learned that there was a leaking sprinkler head in the area of the dip. (Snyder Decl. Ex. G at 12 (deposition testimony of Geoffrey Bickel).) As agreed by counsel for both parties at oral argument, the sprinkler head was located approximately one foot away from the dip and it was later repaired. There is no evidence that the sprinkler system in front of the model home was ever inspected for purposes of discovering potential problems.

B. Procedural History

Plaintiffs began this action by filing a complaint in New York State Supreme Court, Suffolk County, on June 6, 2008. Lennar subsequently removed the case to this Court on July 15, 2008, and answered the complaint five days later. The parties engaged in discovery for much of 2009. On October 9, 2009, Lennar filed a motion to transfer venue and for leave to implead CLC Services, Inc. ("CLC"). While that motion was pending, Lennar filed a letter requesting a pre-motion conference in anticipation of moving for summary judgment. (Docket No. 27.) The Court held a pre-motion conference on March 8, 2010. The parties agreed that briefing on Lennar's summary judgment motion would be held in abeyance pending the outcome of the motion to transfer venue and implead a third party. On May 17, 2010, this Court denied defendant's motion to transfer venue and implead CLC. Defendant filed a motion for summary judgment on July 9, 2010. The memorandum in opposition was filed by plaintiffs on September 9, 2010, and a reply was filed by defendant on September 23, 2010. The Court heard oral argument on the motion on October 29, 2010. On November 4, 2010, defendant submitted a letter to address certain issues raised by the Court at oral argument. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW[2]

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone "will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

### A. Choice of Law

Where jurisdiction is based on diversity of citizenship, federal courts are bound by the choice-of-law rules of the forum state. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (noting that a district court sitting in diversity applies the choice of law rules of the "forum in which it sits"); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272

---

[2] Although plaintiffs cite to the standard for summary judgment under North Carolina law, the Court agrees with defendant that Rule 56 of the Federal Rules of Civil Procedure provides the summary judgment standard in diversity cases, rather than the requirements for summary judgment in the state whose substantive law is applicable, such as North Carolina in the instant case.

4

(2d Cir. 1994) (federal courts are "bound to follow state law on any matter of substantive law"). Thus, the choice-of-law rules of the State of New York apply to this case. Under New York law, the choice-of-law analysis depends on the type of claim in question. For tort claims, New York law requires an interest analysis, which is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co., Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citing *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277 (N.Y. 1993)).

The interest analysis is different depending on whether at issue is a law regulating "primary conduct" or one allocating "losses after the tort occurs." *Cooney*, 612 N.E.2d at 280-81; *see Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002-03 (N.Y. 1994); *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684-85 (N.Y. 1985). At issue in this case is the standard of care that a landowner owes to a lawful visitor on his property. "[T]he law of the place of the tort governs" in situations where, as here, a law regulating primary conduct is at issue. *Padula*, 644 N.E.2d at 1002. *See also Cooney*, 612 N.E.2d at 280; *Schultz*, 480 N.E.2d at 684-85 ("[T]he law of the place of the tort will usually have a predominant, if not exclusive, concern."). As such, the Court will apply the law of the state of North Carolina, where the incident in question occurred, to evaluate plaintiffs' negligence claim.[3]

B. The Negligence Claim

In order to prove negligence under North Carolina law, plaintiffs must show: "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff[s]; (2) the negligent breach of that duty was a proximate cause of plaintiff[s'] injur[ies]; and (3) a person of ordinary prudence should have foreseen that plaintiff[s'] injur[ies were] probable under the circumstances." *Lavelle v. Schultz*, 463 S.E.2d 567, 569 (N.C. Ct. App. 1995) (citing *Talian v. City of Charlotte*, 390 S.E.2d 737, 739 (N.C. Ct. App. 1990), *aff'd per curiam* 398 S.E.2d 330 (N.C. 1990)). Landowners have a duty to "exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Bolick v. Bon Worth, Inc.*, 562 S.E.2d 602, 604 (N.C. Ct. App. 2002); *see also Nelson v. Freeland*, 507 S.E.2d 882, 884, 888 (N.C. 1998). Reasonable care includes giving warning "of hidden perils or unsafe conditions that could be discovered by reasonable inspection and supervision." *Nelson*, 507 S.E.2d at 884; *see also Roumillat v. Simplistic Enterp., Inc.*, 414 S.E.2d 339, 342 (N.C. 1992); *Goldman v. Kossove*, 117 S.E.2d 35, 37 (N.C. 1960); *Harris v. Tri-Arc Food Sys., Inc.*, 598 S.E.2d 644, 647 (N.C. Ct. App. 2004). In order to prove a breach of the duty of reasonable care, plaintiffs must show that the defendant either "(1) negligently created the condition causing the injury, or (2) negligently failed to correct the condition after actual or constructive notice of its existence." *Roumillat*, 414 S.E.2d at 342-43. Failing to inspect property is a form of creating the condition causing injury. *See Nourse v. Food*

---

[3] The outcome of this motion would have been the same had this Court applied the law of the State of New York. *See infra* Section II.B n.6.

5

*Lion, Inc.*, 488 S.E.2d 608, 611-12 & n.1 (N.C. Ct. App. 1997), *aff'd per curiam Nourse v. Food Lion, Inc.*, 496 S.E.2d 379 (N.C. 1998) (defining creating the condition causing injury, or "active negligence," as both "some positive act or some failure in duty of operation which is equivalent of a positive act" and analyzing failure to adequately inspect property under active negligence). Constructive notice can be supported by evidence that a condition "existed for some time" prior to the event in question either through "direct evidence of the duration of the dangerous condition" or through "circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time." *Thompson v. Wal-Mart Stores, Inc.*, 547 S.E.2d 48, 50 (N.C. Ct. App. 2000); *see Nourse*, 488 S.E.2d at 611.

Lennar asserts that there is no genuine issue of material fact as to whether it created the alleged defective condition or had actual or constructive notice thereof. In their motion papers, plaintiffs do not make the argument that defendant had actual notice of the dip in the grass. Plaintiffs' counsel conceded this point during oral argument. Instead, plaintiffs argue that defendant negligently created the condition causing the injury—namely, the dip in the grass—by virtue of failing to inspect its lawn. As set forth below, based upon the evidence in the record, the Court concludes that plaintiffs have raised a genuine issue of disputed fact on this theory of liability that survives summary judgment.

Plaintiffs rely on several pieces of evidence to argue that, even in the absence of actual notice, the defendant negligently created the dip by failing to inspect its lawn. First, with respect to reasonable inferences that could be drawn as to how long the hole had been there prior to the incident in question, there is evidence in the record that: (1) the grass had grown up from inside the hole, and there is no evidence that the grass in the hole was matted down in any way; (2) the grass from within the hole was cut evenly with the rest of the grass surrounding it. Plaintiffs argue, based upon the evidence that the grass was not damaged in any way and grew out of the hole, that it is reasonable to infer that the hole was made first and was in place for a sufficient duration for the grass to grow out of the hole. Moreover, plaintiffs assert, based upon the evidence that the grass in the hole was cut evenly with the grass surrounding the hole, that the hole was in existence not only long enough for the grass to grow out of the hole, but for it to be cut evenly by a landscaper with the rest of the grass. Second, with respect to the alleged failure to inspect, there is no evidence in the record regarding when the grass was last cut before Constance Myers' fall, and there is no evidence of any regular (or even periodic) inspection of the area of the dip for safety concerns by the defendant's employees or their agents. Finally, on the issue of whether a reasonable inspection of the property would have uncovered the hole, there is the following evidence in the record: (1) the hole was relatively large in size and depth—namely, twelve inches wide and four inches deep; (2) the hole was located in the grass between the curb and sidewalk in front of the model home; (3) the hole was located within approximately one foot of a sprinkler (which was repaired shortly after Constance Myers' fall). Given the size of the hole, its location in front of the property, and its proximity to the sprinkler, plaintiffs argue that even a cursory examination of property (including the sprinkler system) would have revealed the existence of the hole, especially

6

if inspected before it had allegedly been camouflaged by the evenly grown grass in the hole at the time of the accident. Having carefully reviewed the record, the Court concludes that, if plaintiffs' evidence is credited, and all reasonable inferences are drawn in plaintiffs' favor, there is sufficient evidence to create a genuine issue of disputed fact as to whether the defendant created the because of a failure to conduct a reasonable inspection of its property.

The Court also has carefully considered the arguments by Lennar as to why summary judgment is warranted and, as discussed below, finds them to be unpersuasive. As a threshold matter, the Court agrees with Lennar's assertion that, under North Carolina law, the burden is not on the defendant to demonstrate inspection and maintenance of the premises; rather, plaintiffs have the burden of demonstrating that there is a genuine issue of material fact on that issue that survives summary judgment. However, to the extent Lennar argues that plaintiffs have failed to make such a showing in this case, the Court disagrees. As noted above, under North Carolina law, failing to reasonably inspect property is equivalent to creating the defective condition. Moreover, plaintiff can create a genuine issue of fact on this issue by circumstantial evidence. *See Phelps v. City of Winston-Salem*, 157 S.E.2d 719, 722 (N.C. 1967). Here, as confirmed by Lennar's counsel during oral argument, there is no evidence in the record of actual inspection of the lawn in front of the model home. Thomas Spicci, who was employed as a sales counselor by Lennar and worked out of an office at the model home, was asked about maintenance of the grass and testified that the lawn of the model home was "probably" mowed once a week, but he could not remember what day of the week it was cut or who the landscaper was. (Snyder Decl. Ex. F at 15:1-18.) The construction manager at the site for Lennar, Geoffrey Bickel, did not state during his deposition, when questioned how "the sprinkler system ran through the property" of the model home, that he had done any inspection of that area prior to September 3, 2006, but rather stated that general maintenance of the model home was handled by a maintenance company. (Snyder Decl. Ex. G. at 9:2-11.) Thus, plaintiffs have created a genuine issue of fact regarding the level of inspection and maintenance of the property performed by the defendant prior to the accident. As to whether reasonable inspection would have revealed the dip, plaintiffs note that the dip over which Constance Myers tripped was located in a visible place between the curb and the sidewalk, near a sprinkler head. The dip was large enough to contain a woman's foot. Plaintiffs argue that had any inspection or reasonable maintenance of the lawn been performed, defendant would have discovered the dip which, when freshly made, would have either (1) had no grass growing inside it or, (2) if it did have grass inside, the grass would have been matted and the dip therefore visible. Further, there is evidence on the record that two days after Constance Myers' fall, a leaking sprinkler head approximately one foot away from the dip was replaced.[4] At

---

[4] Bickel testified that, following Constance Myers' fall, Spicci "brought the incident to my attention and upon investigation, found a low spot between the curb and the sidewalk that was in repair." (Snyder Decl. Ex. G at 11:21-24.) When asked what steps were taken to "fill in the low spot" following Constance Myers' fall on September 3, 2006, Bickel testified that, one or two days after the weekend of the incident, a company called Legacy Landscaping repaired the leaking sprinkler head, and then filled in the dip

7

oral argument plaintiffs conceded that they were not making the argument that the sprinkler caused the dip. Instead, plaintiffs argued that the sprinkler's very proximate location to the dip suggested that the dip would have been discovered had the sprinkler system been inspected at all. In other words, when the dip in the grass was freshly created, any inspection of the sprinkler would have led to the discovery of the dip. Thus, one of defendant's primary arguments—namely, that summary judgment is warranted because it is undisputed that the dip was camouflaged by the grass around it at the time of the incident—is not dispositive of the motion. Plaintiffs' position is that the dip was created *before* the grass grew out of the hole and was evenly cut and, therefore, could have been discovered with reasonable inspection by the defendant *before* it became camouflaged. Viewing all of this evidence in the light most favorable to plaintiffs, including drawing all reasonable inferences in their favor, the Court concludes that there is a genuine issue as to whether defendant created the alleged defective condition by failing to inspect and reasonably maintain its lawn.

The Court also has reviewed the various case authority relied upon by defendant and finds that they do not support a grant of summary judgment in this case. First, *Thornton v. F.J. Cherry Hosp.*, 644 S.E.2d 369 (N.C. Ct. App. 2007), is consistent with this Court's recitation of the law in that it makes clear that a defendant has "the duty to discover hidden unsafe conditions by reasonable inspection and supervision" and is deemed to have notice of the condition if it is a dangerous condition that "should have [been] known" to defendant. *Id.* at 347. Although the court found that the Industrial Commission did not err in finding no evidence to support actual or constructive notice of threats to a patient, that fact-specific inquiry has no application to the evidence in this case. Similarly, in *Revis v. Orr*, 66 S.E.2d 652 (N.C. 1951), the court made clear that liability could exist for a dangerous condition that "in the exercise of due care should have been known" to the occupant or owner of the property. *Id.* at 654. In that case, which involved the plaintiff exiting a restroom in a dance hall and tripping over a chair that was overturned near the restroom, the Court concluded that, even though the manager had not made any formal inspection of the dance hall on the date in question, there was no evidence from which one could find that the defendant, through the exercise of ordinary care, should have known the chair was there where (1) the evidence was silent as to when the chair was knocked down, (2) plaintiff testified that there was sufficient light to see objects around on the floor, and (3) plaintiff was "thoroughly familiar with the dance hall." *Id.* Thus, given there was no evidence that a reasonable inspection would have uncovered the dangerous condition, the lack of inspection was legally irrelevant. However, *Revis* is distinguishable from the instant case because, among other things, the size of the hole, the nature of the hole (*i.e.*, grass growing out of it), the location of the hole in the front of the property, and its proximity to a sprinkler head, when taken together and construed most favorably to plaintiffs, are sufficient to create a genuine issue of fact as to whether the dip would have been discovered through reasonable inspection.

---

with dirt and sod. (Snyder Decl. Ex. G at 12:19-13:3; Bickel Dep. at 19:2-5.) Finally, Bickel stated that, because the work is done on the model homes on a courtesy basis, there is no bill of repair or record of any repair being done. (Bickel Dep. at 19:10-17.)

8

Finally, although defendant cites *Thompson v. Wal-Mart Stores, Inc.*, 547 S.E.2d 48 (N.C. Ct. App. 2000), that case also is distinguishable because it required a jury "to make a number of inferences not based on established facts" and "too many inferences based on other inferences" with regard to how long a spill was on a supermarket floor. *Id*. at 50. Such inferences upon inferences are not necessary here. For example, the undisputed fact that grass was growing out of the dip, was cut evenly with the grass surrounding it, and was not matted down, all support a reasonable inference that the dip was in existence for a period of time sufficient for grass to grow out of it. Although this is certainly not the only reasonable inference that can be drawn, it is sufficient to create an issue of fact (especially when combined with the location of the dip in proximity to the sidewalk and the sprinkler head) regarding whether reasonable inspection would have resulted in discovery of the dip. Thus, the cases cited by defendant do not support granting summary judgment in this case given the factual record.[5]

---

[5] Although not cited by the defendant, the Court is also aware of the decision of the North Carolina Supreme Court in *Goldman v. Kossove*, where plaintiff's foot got caught in a hole in the grass "near the last step down as she walked out of the back entrance to [a] clinic[,]" causing plaintiff to fall and injure herself. 117 S.E.2d at 36-37. As in this case, plaintiff did not have evidence that defendant had actual notice of the hole, and could not show how the hole was created or how long it had been there. *Id*. at 36-38. The court affirmed the lower court's dismissal of the case, noting that "the fact that thick grass eight to ten inches high was right by the steps at the rear entrance of the Clinic, and that plaintiff did not see the hole in the grass when she stepped on the grass, does not permit the legitimate inference that the hole in which plaintiff stepped had existed for a sufficient period of time to give constructive notice of its existence to defendants." *Id*. at 38. However, that case is distinguishable from the instant case because, among other things, there is evidence of the following: (1) the grass in the instant case was not only around the hole as in *Goldman*, but was growing out of the dip and was not matted down, supporting an inference that it had been there for some period of time; (2) the grass in the instant case was not thick and eight to ten inches high as in *Goldman*, but rather was cut evenly with the other grass surrounding the hole, again suggesting that it had been there for some period of time; (3) the plaintiff in *Goldman* had stepped down the steps at the back entrance onto the grass at least 24 times before she fell, and had never seen a hole or depression in that area, *id*. at 36, suggesting that the hole had not been there for some period of time, while plaintiff in the instant case had no familiarity with the ground in question; and (4) the hole in *Goldman* was not near a sprinkler head that had to be repaired within days of the plaintiff's fall, as was the situation in this case. In this case, the presence of a sprinkler head one foot away from the dip in the grass supports a reasonable inference—when viewed in light of the other facts and in the light most favorable to plaintiffs—that an inspection of the sprinkler would have led to the discovery of the dip in the grass when it was first created. Thus, *Goldman* is distinguishable. *See, e.g., Hester v. Guarino*, 251 So.2d 563, 564 (Fla. Dist. Ct. App. 1971) (noting, in case where the hole was grassy and the "grass in the hole grew to the level of the grass of the lawn[,]" that the evidence was stronger in that case than in *Goldman* and concluding: "We express the view that when considered in the light most favorable to appellant, and the inferences reasonably to be drawn therefrom, the evidence is sufficient to present a jury question as to the negligence of the landlord. Specifically, the hole was about a foot long, four to six inches deep and four inches wide. Grass does not grow in and around such a hole overnight, nor over a brief period of time. The inference may also be drawn

In sum, because there is a genuine issue of material fact as to whether defendant created the alleged defective condition by failing to reasonably inspect and maintain its property the Court denies defendant's motion for summary judgment as to plaintiffs' negligence claim.[6]

## C. The Loss of Consortium Claims

Plaintiffs also assert several derivative tort claims for loss of consortium. Defendant does not specifically move against plaintiffs' derivative tort claims, or offer arguments to that effect in its papers. Nevertheless, assuming *arguendo* that defendant's motion is also directed at such claims, because the Court, as set forth *supra*, denies defendant's motion as to plaintiffs' negligence claim, defendant's motion is likewise denied as to plaintiffs' derivative tort claims arising therefrom. *See Goldman v. MCL Cos. of Chi., Inc.*, 131 F. Supp. 2d 425, 427 (S.D.N.Y. 2000) ("It is well established . . . that a loss of consortium claim is not an independent cause

---

that when the defendant mowed or trimmed the grass, in the exercise of ordinary care he could and should have discovered the depression.")

[6] The outcome of this motion would have been the same had New York law applied. Under New York law, "a landowner must maintain its premises in a reasonably safe condition." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 145 (2d Cir. 2001) (citing *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976)). In order "to establish a *prima facie* claim of negligence against a property owner stemming from a defective condition on the property, a plaintiff must show that the owner either created the condition or that he had actual or constructive notice of it." *Greco v. Starbucks Coffee Co.*, No. 05 Civ. 7639 (CM)(LMS), 2006 U.S. Dist. LEXIS 50684, at *7 (S.D.N.Y. July 14, 2006); *see Tuthill v. United States*, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003); *see also Piacquadio v. Recine Realty Corp.*, 646 N.E.2d 795, 796 (N.Y. 1994), *Ulu v. ITT Sheraton Corp.*, 813 N.Y.S.2d 441, 442 (N.Y. App. Div. 2006); *Perez v. Bronx Park S. Assocs.*, 728 N.Y.S.2d 33, 34-35 (N.Y. App. Div. 2001). A landowner has a duty to reasonably "maintain[] its property in a safe condition." *McMullen v. New York*, 604 N.Y.S.2d 335, 337 (N.Y. App. Div. 1993) (citing *Kush v. City of Buffalo*, 449 N.E.2d 725, 833 (N.Y. 1983) and *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976)). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident" to permit defendant to "discover and remedy it." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (quoting *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986)); *see also Perez*, 728 N.Y.S.2d at 35. Because New York law is analogous to that of North Carolina on the issue of negligence, the analysis would be the same under the laws of both jurisdictions. *See, e.g., Sherry v. N. Colonie Cent. Sch. Dist.*, 833 N.Y.S.2d 746, 749 (N.Y. App. Div. 2007) (in case where plaintiff sued after stepping into hole on school district's property, court found genuine issues of material fact existed regarding whether premises were maintained in reasonably safe condition and whether district had constructive notice of a dangerous condition). Other jurisdictions, with a negligence standard analogous to that in New York and North Carolina, also have reached the same conclusion. *See Lawless v. Sasnett*, 408 S.E.2d 432, 432-33 (Ga. Ct. App. 1991) (reversing summary judgment for the defendant where plaintiff injured herself after stepping into a hole in a fruit orchard covered by grass and noting that, although there was no evidence of defendant's actual knowledge of the hole and the hole could not be seen by plaintiff even when she was looking down while walking, "[f]rom the appellant's testimony concerning the size of the hole [big enough to fit her foot], a jury would be authorized to infer both that it had been in existence for a substantial period of time and that it was large enough to have been observable during routine mowing and maintenance").

of action . . . and may only be maintained . . . pursuant to the primary tort.") (internal quotation marks and citations omitted); *O'Gorman v. Holland*, No. 97 Civ. 0842 (WHP), 2000 U.S. Dist. LEXIS 1009, at *8 (S.D.N.Y. Feb. 3, 2000) ("A loss of consortium claim is not an independent cause of action, but is derivative in nature.").

IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is denied in its entirety.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: December 30, 2010
Central Islip, New York

\* \* \*

Attorney for plaintiffs is Julio C. Galarza, Galarza Law Office, P.C., 5020 Sunrise Highway, 2nd Floor, Massapequa Park, NY 11762. Attorney for defendant is Allison Ann Snyder, Schnader Harrison Segal & Lewis, 140 Broadway, Suite 3100, New York, NY 10005.